# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:  Case No. A07-00311-DMD<br><br>LARA HENRY BAKER and ALICE LELIA BAKER,<br><br>Debtors. | Chapter 7<br><br>**Filed On 7/16/08** |
| KENNETH BATTLEY,<br><br>Plaintiff,<br><br>v.<br><br>SEQUESTERED SOLUTIONS ALASKA, LLC,<br><br>Defendant. | Adversary No. A08-90001-DMD |

## MEMORANDUM REGARDING SUMMARY JUDGMENT

Chapter 7 trustee Kenneth Battley has filed a complaint against Sequestered Solutions Alaska, LLC ("SSA"). He seeks to disallow a claim filed by SSA or, alternatively, have SSA's claim equitably subordinated to the claims of other unsecured creditors. SSA has moved for summary judgment upon the plaintiff's complaint. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (C). This court has jurisdiction under 28 U.S.C. § 1334(b) and the district court's order of reference. I find SSA's motion for summary judgment meritorious. Summary judgment will be entered in its favor.

Background

SSA is a limited liability company under Alaska law. It was formed in late 2002 by Joseph Henri and Sam Morales. SSA operates a computer server farm. An

operating agreement disclosed that Henri, Morales and debtor Lara Baker each held a 33 and 1/3 percent membership interest as the company was formed. Henri contributed $2,000.00 to SSA, Morales contributed $2,350.00 and Baker contributed $52,000.00. Morales and Baker work full time for SSA.

SSA operated at a loss. In 2003 it had a loss of $13,770.00. In 2006, SSA had a loss of $1,762,380.00. Baker's membership interest reflected a negative capital account of $151,561.00 as of December 31, 2005. His interest in SSA was transferred to his wife, Alice, in 2004. Baker believed this transfer would gain a competitive advantage for SSA. The advantage never materialized, however, and the interest was transferred from Alice back to Lara Baker on February 24, 2006.

SSA was interested in obtaining a contract for server services with the State of Alaska. Lara Baker's son-in-law is employed as chief security officer for the State of Alaska. Baker was concerned about a possible conflict of interest jeopardizing a contract between the State and SSA. He resigned as a member of SSA on April 6, 2006, to avoid possible conflict of interest charges. Baker has continued to work full-time for SSA, however. When he resigned from SSA, he signed a promissory note in favor of SSA for the amount of his negative capital account, $151,561.00. The note bears interest at the rate of 6% per annum, with a due date of April 5, 2016. Baker signed the note to avoid what he believed would be a tax liability on $151,561.00 of taxable income. The note has not been repaid, and SSA has filed a proof of claim for this amount in the bankruptcy case.

After Baker resigned as a member of SSA, in July of 2006, he borrowed $100,000.00 from First National Bank Alaska ("FNBA"). The loan was collateralized by two lots owned by Baker. Baker used $4,000.00 of the loan proceeds to pay real property taxes and lent the balance of $96,000.00 to SSA. The debt to FNBA was paid in full when trustee Battley sold the two lots in this bankruptcy proceeding. SSA has not repaid the loan from Baker, however. SSA proposes to set its $96,000.00 obligation off against Baker's $151,561.00 note. The trustee has filed this adversary proceeding to disallow SSA's claim or to subordinate the claim to those of the other general unsecured creditors. The trustee also argues that, if SSA's claim is not disallowed or subordinated, the claim, and SSA's note to Baker, should be present valued before setoff is allowed.

Summary Judgment

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] I find that there are no genuine issues of material fact here which would preclude entry of judgment. The essential facts surrounding Baker's transactions with SSA are uncontested.

The parties dispute whether it was necessary for Baker to provide the promissory note to SSA in order to avoid tax liability, and affidavits have been submitted on this point. According to the trustee's accountant, Russ Minkemann, there was no need to

---

[1] Fed. R. Civ. P. 56(c); made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

3

execute the note to avoid the tax liability. Accountants Dori Ditmore and Rebecca Martin dispute Minkemann's opinion. Debtor Lara Baker, a former employee of H and R Block, adds his voice to the dispute on behalf of SSA. But I don't see this as a material factual issue which would preclude summary judgment. The essentials of the transaction that created the $151,561.00 obligation, and the parties' reasons for conducting the transaction in this manner, are not contested. These uncontested facts permit entry of summary judgment.

Analysis

### 1) The Transaction was not Unconscionable

The trustee claims the $151,561.00 note Baker executed when he resigned from SSA is unenforceable because it lacks consideration. I disagree. SSA is a limited liability company formed under Alaska law. By statute, a member of an LLC "may not resign from a limited liability company except at the time or upon the happening of events specified in the operating agreement of the company and in accordance with the operating agreement of the company."[2]

SSA's operating agreement, dated April 11, 2005, does not allow a transfer of units to occur unless a detailed set of procedures set forth in paragraph 6.1.1.2 is followed. The agreement has no provision that allows a member to unilaterally resign and return his units. SSA allowed Baker to immediately withdraw and tender his units to the company. In return, the company got a note for $151,561.00 due in ten years. This may not have been the

---

[2] Alaska Stat. § 10.50.185 (2008).

4

best deal for Baker. However, "[i]t is ordinarily not the court's role to evaluate the adequacy of the consideration agreed upon by the parties. The bargain should be left in the hands of the parties."[3] The fact that accountants disagree over the tax ramifications of Baker's resignation with a negative capital account does not mean that the note lacked consideration. Nor does it create a genuine issue as to a material fact.

The note is not an unconscionable obligation. As noted by SSA, Williston cites the following statement from a Utah case with approval.

> People should be entitled to contract on their own terms without the indulgence of paternalism by courts in the alleviation of one side or another from the effects of a bad bargain. Also, they should be permitted to enter into contracts that actually may be unreasonable or which may lead to hardship on one side. It is only where it turns out that one side or the other is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice, that equity will deny the use of its good offices in the enforcement of such unconscionability.[4]

That standard is not met here. There is nothing in the Baker/SSA transaction that a decent, fair-minded, person would view with a profound sense of injustice. Baker is a businessman and commercially sophisticated. When he resigned his interest in SSA, he executed a note for the balance of his negative capital account, payable in ten years. In exchange, he

---

[3] *Reeves v. Alyeska Pipeline Service Co.,* 926 P.2d 1130, 1142 (1996) (citation omitted).

[4] 8 Williston on Contracts § 18.1 (4th ed.), *citing Carlson v. Hamilton,* 332 P.2d 989, 990-991 (1958).

5

received the benefit of immediately terminating his interest in SSA, a benefit that was not permitted under the SSA operating agreement. Baker knew what he was doing at the time he entered this transaction. This was not an unconscionable transaction, and this court has no business amending the contract to fit the trustee's view of equity.

### 2) Equitable Subordination

The trustee argues that SSA's claim should be equitably subordinated pursuant to 11 U.S.C. § 510(c) . Subsection (c)(1) provides that a court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."[5]

> The subordination of claims based on equitable considerations generally requires three findings: "(1) that the claimant engaged in some type of inequitable conduct, (2) that the misconduct injured creditors or conferred unfair advantage on the claimant, and (3) that subordination would not be inconsistent with the Bankruptcy Code." Where non-insider, non-fiduciary claims are involved . . . the level of pleading and proof is elevated: gross and egregious conduct will be required before a court will equitably subordinate a claim. . . . Although equitable subordination can apply to an ordinary

---

[5] 11 U.S.C. § 510(c)(1) (West 2008).

creditor, the circumstances are "few and far between."[6]

In *United States v. Noland,*[7] the Court found that the IRS's priority administrative expense claim for tax penalties could not be equitably subordinated on a categorical basis, and reversed a bankruptcy court and Sixth Circuit decision to the contrary. The Court noted that application of the equitable subordination doctrine "was generally triggered by a showing that the creditor had engaged in 'some type of inequitable conduct,'"[8] but declined to hold that a finding of creditor misconduct was always required before the doctrine could be applied.[9]

The Ninth Circuit has not been so coy about the requirement of creditor misconduct in equitable subordination cases. With one exception, the court has consistently required some form of creditor misconduct in equitable subordination cases arising both before and after *Noland.* In *In re Branding Iron Steak House,*[10] the court found that undercapitalization, without further misconduct, was not enough to justify subordination of the claims of officers, directors and shareholders to the claims of other creditors. The status of the creditor, as an officer, director or controlling shareholder, was insufficient by itself to

---

[6] *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mtg. Co.)*, 471 F.3d 977, 1007 (9th Cir. 2006) (citations omitted).

[7] 517 U.S. 535 (1996).

[8] *Id.* at 538, *citing In re Mobile Steel*, 563 F.2d 692, 700 (5th Cir. 1977).

[9] *Noland*, 517 U.S. at 543.

[10] *Wood v. Richmond (In re Branding Iron Steak House)*, 536 F.2d 299 (9th Cir. 1976).

7

justify subordination.[11]  "[A] Bankruptcy Court is a court of equity, and subordination requires some showing of suspicious, inequitable conduct beyond mere initial undercapitalization of the enterprise."[12]  Similarly, in *Christian Life Center Litigation Defense Comm. v. Silva (In re Christian Life Center)*,[13] the court required a showing that the claimant behaved inequitably to the detriment of the debtor and other creditors before equitable subordination could be allowed.  And in an admiralty case, *Wardly Int'l. Bank, Inc.v. Nasipit Bay Vessel,*[14] the Ninth Circuit found that both in admiralty and bankruptcy, the requirements of equitable subordination have the same three general elements, including the requirement of active misconduct by the claimant.[15]

Three subsequent decisions have affirmed the Circuit's adherence to the three part test, including the requirement of creditor misconduct: *Spacek v. Thomen (In re Universal Farming Industries),*[16] *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),*[17] and *Lazar v. State of California (In re Lazar).*[18]  The Ninth Circuit's most recent decision on equitable subordination arose out of the subprime lending crisis.  In *First*

---

[11] *Id.* at 301.

[12] *Id.* at 302.

[13] 821 F.2d 1370 (9th Cir. 1987).

[14] 841 F.2d 259 (9th Cir. 1988).

[15] *Id.* at 263.

[16] 873 F.2d 1334, 1337 (9th Cir. 1989).

[17] 163 F.3d 570, 583 (9th Cir. 1998).

[18] 237 F.3d 967, 985 (9th Cir. 2001).

8

*Alliance Mortgage Company v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.),*[19] subprime borrowers and the chapter 7 trustee sought to subordinate Lehman Brothers' secured claims of over $77 million to unsecured creditors. Applying the three part test, the court found that Lehman Brothers had not engaged in inequitable conduct. Equitable subordination was not allowed.

There is a case in which the Ninth Circuit indicated equitable subordination could be permitted without a finding of creditor misconduct. In *LaGrand Steel Products Co. v. Goldberg (In re Poole, McGonigle & Dick, Inc.),*[20] the Ninth Circuit found that claims arising from stock purchase agreements were subject to subordination when the debtor was insolvent or the payments rendered the debtor insolvent. Goldberg and Harper sold their shares in Poole, McGonigle and Dick, Inc., to the corporation. Some payments were made to Goldberg and Harper before the corporation filed for chapter 11 relief. The debtor's plan called for payments to Goldberg and Harper on a par with trade accounts. LaGrande, a trade creditor, objected to such treatment. The bankruptcy court found that payments to Harper and Goldberg would violate Oregon state law, and subordinated their claims. No party alleged that Harper or Goldberg had committed fraud or were responsible for any wrongful conduct. Under applicable Oregon law, however, no payments could be made to the former shareholders when the corporation was insolvent or when the payments would make it insolvent. The Ninth Circuit concluded that if the debtor's payment for repurchased shares

---

[19] 471 F.3d 977, 1006 - 1007 (9th Cir. 2006).

[20] 796 F.2d 318 (9th Cir. 1986).

9

was illegal under state law, that fact alone was sufficient to require subordination of Harper's and Goldberg's claims. No creditor misconduct was required under such circumstances.

The *Poole, McGonigle and Dick* exception to the general rule requiring inequitable conduct by the claimant has no application here. SSA is not seeking to recover payments on a stock purchase agreement. Payment to SSA from the debtor's bankruptcy estate does not violate Alaska law. Moreover, SSA has not committed fraud or engaged in any other form of inequitable conduct. No creditor misconduct is present here, nor was the Baker note entered in violation of state law. There are no facts present here that would justify equitable subordination of SSA's claim.

The trustee also argues that SSA is an "insider" whose dealings are subject to elevated scrutiny. Under 11 U.S.C. § 101(31)(A)(ii), an insider includes a partnership in which the debtor is a general partner. SSA is a limited liability company, not a general partnership. It is not included in the definition of an "insider." The trustee argues that limited liability companies should be included as insiders under the statute. Maybe they should, but that is a matter for Congress to decide. SSA is not an insider as defined under § 101(31)(A). Nor is it a fiduciary of the debtor. "Where non-insider, non-fiduciary claims are involved, . . . the level of pleading and proof is elevated: gross and egregious conduct will be required before a court will equitably subordinate a claim."[21] There is no evidence of misconduct by SSA. The trustee may surmise that Baker could have cut himself a better

---

[21] *First Alliance Mortgage,* 471 F.3d at 1006.

10

deal, but this alone doesn't justify subordination. SSA's claim will not be equitably subordinated.

### Setoff and Present Value

Baker lent SSA $96,000.00 in 2006. The principal balance on the note SSA gave Baker for this loan is $79,980.00. This obligation is now an asset of this bankruptcy estate, but may be set off against SSA's claim for $151,561.00.[22] To give proper credit for the setoff, the date this case converted from chapter 13 to chapter 7, August 6, 2007, is determinative. On this date, Baker's note to SSA totaled $154,600.00, including interest. SSA's note to Baker was $81,169.95, with interest, on the same date. SSA's claim, net of the set off, should be allowed for $73,430.05. I could find no authority for the trustee's proposal to present value Baker's the respective notes prior to setoff.

### Conclusion

SSA's motion for summary judgment will be granted. The first two counts of the trustee's amended complaint seek to disallow SSA's claim on grounds of lack of consideration and unconscionablity. Those claims will be dismissed with prejudice. The trustee's third count seeks equitable subordination of SSA's claim. As no creditor misconduct is present in this case, this count will also be dismissed with prejudice. The

---

[22] 11 U.S.C. §§ 542(b), 553.

trustee's fourth count requests judgment against SSA on a note it issued to Lara Baker. This count will be dismissed with prejudice because SSA's note will be set off against Baker's note to SSA. SSA's claim will be allowed in the sum of $73,430.05. Count 5 of the trustee's complaint seeks a reduction in SSA's claim to allow for present value. There is no authority for this proposition and the fifth claim will also be dismissed with prejudice. An appropriate order and judgment will be entered.

DATED: July 15, 2008

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  W. Artus, Esq. (for plaintiff)
        J. Henri, Esq. (for defendant)
        P. Gingras, Adv. Case Mgr.
                7/16/08